# In the United States Court of Federal Claims

No. 09-673C

(Filed: February 25, 2011)
(Released for Publication:  March 11, 2011)[1]

*******************************
\* 
**RN EXPERTISE, INC.,**            \*          Bid Protest; Motion for Judgment on
                                   \*          the Administrative Record;
          Plaintiff,              \*          Solicitation Cancellation;
                                   \*          Reasonableness of Cost Justification;
    v.                             \*          Economy Act, 31 U.S.C. § 1535;
                                   \*          Interagency Agreements;
**THE UNITED STATES**,            \*          Procurement Notice; Competition in
                                   \*          Contract Act ("CICA"), 10 U.S.C. §
          Defendant.              \*          2304; Contract Modifications
                                   \*
*******************************

*Jon W. van Horne*, Law Offices of Jon W. van Horne, Esq., Gaithersburg, MD, for Plaintiff.

*Paul Davis Oliver*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Brian M. Simkin*, Assistant Director, for Defendant.


**DAMICH**, Judge.

## OPINION AND ORDER


        This bid protest case is before the Court on the parties' cross-motions for judgment on the administrative record related to the Plaintiff's claims concerning the procurement of urine collection services for the Department of the Navy's drug testing program.  The Plaintiff, RN Expertise, Inc., was the presumptive awardee when the Department of the Navy decided to cancel its solicitation and acquire collection services via an interagency agreement between the Department of Defense and the Department of the Interior.  The Plaintiff contends that the Department of the Navy's cancellation decision was arbitrary, capricious, and in violation of

---

[1]  This opinion was originally issued under seal on February 25, 2011, pending a determination among the parties whether to propose redactions of proprietary or other confidential information.  The parties have advised the Court that they have no redactions to propose.  The Court has made a few minor clarifications to the original opinion.

procurement law.  The Plaintiff also challenges the interagency agreement and another, later contract between the Department of Defense and Pembrooke Occupational Health, Inc., entered into for drug testing services, as violating federal statutes and procurement regulations.[2]

For the reasons stated below, the Court finds that the Department of the Navy's decision to cancel the solicitation was not arbitrary, capricious, or in violation of procurement law.  The Court also finds that the Plaintiff has failed to meet its burden of proving that the Department of Defense's actions were clear and prejudicial violations of procurement law.  Accordingly, the Court DENIES Plaintiff's motion for judgment on the administrative record and GRANTS the Defendant's cross-motion for judgment on the administrative record.


## I.    BACKGROUND

### A.    Factual Background

Each agency in the executive branch of the Federal Government is required to establish a drug testing program.  Administrative Record ("AR") 46.  The primary components of the drug testing process include the collection of a urine specimen, laboratory analysis, and medical review officer (MRO) services.  AR 591.  The issues in this case relate to the Department of the Navy's ("Navy's") cancellation of its solicitation for urine collection services and the Department of Defense's ("DOD's") procurement of urine collection services.  Specifically, the DOD's procurement actions at issue include an interagency agreement ("IAA") with the Department of the Interior ("DOI"), a solicitation for drug testing services, and a contract with Pembrooke Occupational Health, Inc. ("Pembrooke").

### 1.    The Navy's Solicitation for Urine Collection Services

From 1993 to 2008, the Navy contracted with BAE Systems Technologies ("BAE") for its urine collection services.  AR 592.  After BAE informed the Navy that it would not renew its contract for 2009, the Navy Office of Civilian Human Resources ("OCHR") submitted a request to Navy's Fleet Industrial Supply Center ("FISC") to issue a solicitation for urine collection services for the Navy.  AR 3, 592.  FISC issued this solicitation, no. N00189-08-R-Z071, on October 6, 2008. AR 171.

According to the solicitation, the Navy's requirements included (1) collections in the continental United States ("CONUS"), (2) overseas collections ("OCONUS"), (3) pre-employment collections, and (4) reasonable suspicion collections.  AR 34-36.  The offerors were required to provide unit and total pricing for each of the four categories.  AR 34-36, 175-76.

The solicitation closed on November 12, 2008.  AR 171.  The Navy, via FISC, received four proposals in response to the solicitation.  *Id.*  The Navy selected two of the four offerors,

---

[2]  For clarity, the Court distinguishes the actions of the Department of the Navy and the Department of Defense as they relate to the Plaintiff's allegations.  The Court refers generally to "the Government" as the Defendant when referring to the Defendant's arguments as presented in its briefs.

including the Plaintiff, for further discussions. *Id.* Following these discussions, on December 9, 2008, the two bidders submitted their final offer or response. *Id.* at 171-72. The Navy contracting officer compared technical and pricing evaluations for the two offerors and determined that the Plaintiff's offer represented the best value, although at a higher price. AR 177. On December 15, 2008, the Navy contracting officer informed the Navy Drug Program Manager ("DPM") of her recommendation to select the Plaintiff. *See* AR 586.

### 2.    The Navy's Decision to Cancel the Solicitation

After the Navy contracting officer determined that the Plaintiff's offer represented the best value, but before a contract was awarded, the Navy DPM requested funding approval from the DOD Tricare Management Agency ("TMA") – the fund sponsor for DOD drug testing programs. *See* AR 4, 211, 592. Army Colonel Shippee, of TMA, indicated that the Plaintiff's offer was too expensive and that DOD's IAA with DOI for drug testing services was a less expensive alternative for the Navy's urine collection services. AR 592.

Colonel Shippee's response prompted the Navy DPM to compare the services to be provided under the IAA to the services required under the solicitation with the result that she concluded that "the required services under both instruments were virtually identical." AR 311. Under the IAA Service Level Agreement, the baseline services included "in-house, on-site, and off-site collections with a nation-wide and international network of collection sites provided through venders." AR 581. The types of specific tests to be available under the IAA included "pre-employment, random, [and] reasonable suspicion/cause" tests. AR 581. Accordingly, the Navy DPM determined that the Navy's requirements for worldwide collections, on-site and off-site collections, pre-employment collections, and reasonable suspicion collections could be met through the IAA. AR 311.

Under the IAA, the urine collection services could be performed by trained DOI collectors or through DOI's contract with Pembrooke ("DOI-Pembrooke contract"). AR 593, 603. The cost was the same for the customer whether DOI or Pembrooke provided the services. AR 575-76 (October 2008 IAA), AR 22-23 (December 2008 IAA), AR 593. The contracting officer determined that the collection cost under the IAA for each category of collection (i.e., CONUS, OCONUS, pre-employment, and reasonable suspicion) was less than the Plaintiff's offer. AR 211-12.

On December 18, 2008, the Navy DPM notified the contracting officer that "[a]fter reviewing the terms and conditions of the [IAA] . . . , it has been determined that it is the most cost efficient to the Department of the Navy." AR 586. On the same day, FISC issued the amendment to cancel the solicitation. AR 182. FISC's memorandum to the file, in support of the cancellation decision, indicates that the IAA "will provide urine collection services at a lower cost than the proposals received in response to the solicitation" and "the offers resulting from [the] solicitation do not provide the best value for the Navy." AR 212.

### 3.    DOD's Procurement of Urine Collection Services

During the Navy's solicitation process, but not known to the Navy contracting officer, DOD was deliberating on more cost effective alternatives for its drug testing services, to include urine collection, lab testing, and MRO services.  *See* AR 211.  At that time, other units within DOD maintained separate IAAs with DOI for such services.  AR 599, 604.

DOD determined that it would consolidate and centralize drug testing services beginning in fiscal year 2009 and pursue a competitive procurement.  *See* AR 596, 599-600, 604.  TMA notified the United States Army Medical Research Acquisition Activity ("USAMRAA")[3] "of its need to procure specimen collection, laboratory analysis, and medical review services."  AR 596.  On September 4, 2008, USAMRAA, on behalf of DOD/TMA, posted a synopsis and solicitation on FedBizOpps website for MRO services.  AR 615, 619, 898-99 (Solicitation No. W81XWH-08-T-0429).  In response to questions from potential offerors regarding the extent of clinic collection services, USAMRAA amended the solicitation on September 24, 2008, to add these services to the Scope of Performance Work Statement.  AR 616, 738, 748-49, 754.  According to the Government, the contract specialist posted the amended solicitation on the FedBizOpps website.  AR 616.

On November 5, 2008, USAMRAA, awarded the contract to Pembrooke ("DOD-Pembrooke contract"), which included MRO and clinic collection services, but did not include on-site collection services.  AR 596, 760.  As a result, the DOD-Pembrooke contract initially was "not ready" to provide all DOD's collection requirements.  AR 600-01.

In the interim, units within DOD obtained their collection services via DOD's consolidated IAA with DOI, which was effective October 1, 2008.  AR 599.  At that time, the IAA did not include the Navy's requirements.  After the Navy cancelled the solicitation in December 2008, the Navy's urine collection requirements were incorporated into the IAA.  AR 20-23.

In April of 2009, DOD modified the DOD-Pembrooke contract to add on-site collections.  AR 821.  The contracting officer for this contract determined that the addition was within the scope of the original contract, and therefore, did not require a competitive procurement.  AR 611.

As a result of the two DOD procurement contracts in place for 2009, the Navy obtained urine collection services through the IAA between January and March of 2009, and through the DOD-Pembrooke contract beginning in April of 2009.  AR 593, 838-41.

### B.    Procedural History

After being notified that the Navy had cancelled the solicitation in which it was the awardee, the Plaintiff sent a letter to FISC claiming that there was no compelling reason to cancel the Navy's solicitation for urine collection services. AR 186.  The Navy treated the

---

[3] USAMRAA provides contracting support to the TMA and worked with TMA on "a solicitation package" for DOD's drug testing services.  AR 595-96.

Plaintiff's letter as a protest to the contracting officer.  AR 207.  The contracting officer
responded in a letter on January 9, 2009, and indicated that:

> The compelling reason for the government canceling the solicitation was that
> there was an alternative solution available that would allow the Navy to receive
> the same services set forth in the solicitation N00189-08-R-Z071 that would save
> the government money and allow DoD to gain further efficiencies in the
> administration of the Navy's Urinalysis Collections program.  The savings that
> would be gained by using this alternative solution, without taking into account the
> programmatic efficiencies, are $592,910.40, or a 28% savings, in the base year
> alone.

> Paragraph (g), FAR Clause 52.212-1, Instructions to Offerors – Commercial
> Items, states that "... The Government may reject any and all offers if such action
> is in the public interest; ...".  The contracting officer made the determination that
> saving the government over half a million dollars a year for the next five years,
> while also taking advantage of efficiencies that streamline the administration of
> the DoD Drug Free Program by consolidating the Navy's urinalysis collection
> with the DoD's urinalysis collection, was in the public's best interest.

AR 207.  The contracting officer thus denied the Plaintiff's request to "re-open the solicitation
and allow further negotiations."  *Id.*

On January 14, 2009, the Plaintiff filed a bid protest with the United States Government
Accounting Office ("GAO") challenging the Government's cancellation of the Navy's
solicitation.  AR 14-19.  GAO denied the protest on March 27, 2009.  AR 508-12.  On October 7,
2009, the Plaintiff filed its initial complaint with this court alleging that the Navy's decision to
"terminate the award" was in violation of regulation and statute, Compl. ¶¶ 33-34, and the
Navy's decision to cancel the solicitation for urine collection services was arbitrary, capricious,
and an abuse of discretion, Compl. ¶¶ 38-39.

On December 22, 2009, the Plaintiff moved to supplement the Administrative Record
with materials related to the IAA and the DOD-Pembrooke contract.  This motion precipitated a
series of motions and amended complaints all centered around the "connectedness" of these
contracts with the Navy's procurement and the Plaintiff's interest in them, which raised the
issues of jurisdiction and of standing.  The denouement was this Court's decision on June 25,
2010, that the Plaintiff "is an actual or prospective offeror whose direct economic interest is
affected by the Navy's acquisition decisions, and it has standing to bring this case." *RN
Expertise, Inc. v. United States*, No. 09-673 C, 2010 WL 2674536, at *2 (Fed. Cl. June 25,
2010).  The Court also found that it had jurisdiction over actions subsequent to the cancellation
of the solicitation, namely, the IAA and the DOD-Pembrooke contract, because they were clearly
in connection with the Navy's procurement.  *See id.*

On August 20, 2010, the Plaintiff filed a Motion for Judgment on the Administrative
Record.  On September 16, 2010, the Government filed a response and Cross Motion for

Judgment Upon the Administrative Record.  The Plaintiff filed its response and reply on October 18, 2010, and the Government filed its reply brief on November 4, 2010.

## II.    JURISDICTION AND STANDING

As discussed above, in the June 25, 2010, Order, the Court addressed jurisdiction and standing in response to the Defendant's motion to dismiss.  The Court denied the Defendant's motion for lack of standing, and in the alternative, for lack of jurisdiction.

Pursuant to 28 U.S.C. § 1491(b)(1) (the Tucker Act), the Court of Federal Claims has jurisdiction "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency . . . or to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In this case, the Court has jurisdiction over the Plaintiff's claims because the Plaintiff is objecting to the Navy's decision to cancel a solicitation and certain DOD actions, all in connection with the procurement of the Defendant's drug testing services.

Under § 1491(b)(1), only an "interested party" has standing.  *See* 28 U.S.C. § 1491(b)(1) ("jurisdiction to render judgment on an action by an interested party").  An "interested party" means "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001)(construing "the term 'interested party' in §1491(b)(1) in accordance with the [Competition in Contracting Act ("CICA")]").  The Plaintiff has established standing because it has a direct economic interest as an actual offeror (with regard to the Navy's requirements for urine collection services) and as a potential offeror (with regard to DOD's procurement actions for collection services).

## III.    STANDARD OF REVIEW

In a bid protest action, the court reviews the Defendant's procurement actions under the standards set forth in the Administrative Procedures Act (APA), 5 U.S.C. § 706.  28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).  Under the APA, the court reviews the record to determine whether the decision of the agency is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D).

Thus, the Court may set aside an agency's procurement decision if the decision lacked a rational basis or the agency violated a procurement regulation or procedure.  *Impresa*, 238 F.3d at 1332.  In *Gentex Corp. v. United States*, the Court of Federal Claims elaborated: "'[t]he protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law.'" 58 Fed. Cl. 634, 648 (2003) (quoting *Info. Tech. & Applications Corp. v. United States,* 51 Fed. Cl. 340, 346 (2001), *aff'd,* 316 F.3d 1312 (Fed. Cir. 2003)).

For allegations that the agency's decision lacked a rational basis, "the test for reviewing courts is to determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" *Impresa*, 238 F.3d at 1332-33.  Thus, for a cancellation decision, justified on the basis of cost savings for the Government, as here, the issue is whether there was a reasonable analysis and expectation of cost savings supported by the facts in the administrative record.  *See Cygnus Corp. v. United States*, 72 Fed. Cl. 380, 384-85 (2006)(applying the *Impresa Construzoni* rational basis test to a decision to cancel a solicitation).

To succeed in a bid protest on the basis of an alleged violation of statute and regulation, the protestor must "show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238 F.3d at 1333.  The protestor must establish that there was "a significant error in the procurement process" and that it was prejudiced by it.  *Labatt Food Serv., Inc. v. United States,* 577 F.3d 1375, 1380 (Fed. Cir. 2009).  In *Textron v. United States*, the Court of Federal Claims explained that to establish a prejudicial violation on the merits (i.e., after clear violation of applicable procurement regulation is proven), "the court should determine as a factual matter that the protestor has been prejudiced."  74 Fed. Cl. 277, 329 (2006).  The Plaintiff may show actual prejudice by establishing that "the procurement violation was significant to the protestor's chance of being awarded the contract."  *Id.*

Contracting officers are entitled to broad discretion in the procurement process.  *Impresa*, 238 F.3d at 1332.  In certain instances where a greater degree of discretion is granted, the protestor faces even a higher burden of "proving that the award was arbitrary, capricious, an abuse of distraction, or otherwise not in accordance with law."  *Galen Medical Assocs. Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004).  As one Court of Federal Claims decision noted, the cancellation of a solicitation is one of those instances warranting "a great degree of discretion, especially where . . . the solicitation explicitly permits the agency to make no award at all."  *Cygnus*, 72 Fed. Cl. at 385.  Similarly, in this case, the Navy's solicitation provides that "[t]he Government may reject any and all offers if such action is in the public interest."  AR 82.

Where the parties have filed cross-motions for judgment on the administrative record, as here, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court."  *Bannum, Inc.  v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005).  Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record.  *See id.* at 1355-56.  Questions of fact are resolved by reference to the administrative record.  *Id.* at 1356.  Thus, a court may reject a party's claim that lacks "any real proof," or similarly, is unsupported by the administrative record.  *Id.* at 1355.

## IV.   DISCUSSION

The Court will first discuss the Plaintiff's objections to the Navy's solicitation cancellation decision and then the Plaintiff's objections to DOD's actions in connection with the Defendant's drug testing services.

### A.      The Navy's Decision to Cancel the Solicitation Was Not Arbitrary and Capricious, or Otherwise in Violation of the Law

The Court finds that the Navy's decision to cancel the solicitation for urine collection services and use the IAA was rational because the Navy had a reasonable expectation of cost savings.  In addition, the Plaintiff has not demonstrated that the cancellation decision was in violation of applicable statutes and regulations.

The Plaintiff argues that the Navy's decision to cancel the solicitation was arbitrary and capricious or otherwise in violation of the law because (1) an official who lacked authority to make the cancellation decision wrongly influenced the decision and (2) the Navy's cost analysis was flawed.[4]   The Court will address the alleged violation of law and then the reasonableness of the Navy's cost analysis.

### 1.      Independent Judgment

The Plaintiff argues that Army Colonel Shippee, of TMA, wrongfully interfered in the procurement decision by preventing the Navy's contracting officer from exercising independent judgment in deciding to cancel the Navy's solicitation.  The Plaintiff cites Federal Acquisition Regulations ("FAR") 15.303 (source selection responsibilities), which establishes that the contracting officer is generally the source selection authority, and cites FAR 15.308 (source selection decision) for the "independent judgment rule."  Pl.'s Mot. J. Admin. R. ("Pl.'s Mot.") 13.  FAR 15.308 states that "[t]he source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the *source selection* decision shall represent the SSA's independent judgment."  FAR 15.308 (emphasis added).

The Government argues that the federal regulations that require independent judgment for source selection decisions do not apply to solicitation cancellation decisions.  The Government contends, citing *Madison Services, Inc. v. United States*, 92 Fed. Cl. 120, 126 (2010), that the applicable regulations governing the cancellation of solicitations are FAR 15.305(b) (providing that source selection authorities may reject all proposals if in the best interest of the Government) and FAR 15.206(e) (providing when cancellation of a solicitation is required).  Def.'s Cross Mot. J. Admin. R. & Resp. to Pl.'s Mot.  J.  Admin. R. ("Def.'s Cross Mot. & Resp.") 19.  Finally, the Government points out that there is no case law applying the source selection "independent judgment rule" to solicitation cancellation decisions.  *Id.* at 18-19.

---

[4]  In addition, the Plaintiff alleges that the solicitation cancellation decision was arbitrary and capricious because DOD failed to follow mandatory procedures under the Economy Act when the Department executed the IAA.  This allegation is discussed in Section IV.B, *infra*, which addresses DOD's actions and alleged violations  that occurred outside of the purview of the contracting officer's decision to cancel the Navy's solicitation.  Although the existence of the  IAA was a factor in the Navy's decision to cancel the solicitation, DOD's execution of the IAA neither occurred, nor was required to occur, prior to the Navy's cancellation decision.  Thus, the execution of the IAA is not a factor in determining whether the cancellation decision was arbitrary and capricious or in violation of procurement law.

The Plaintiff, in its reply brief, did not respond to the Government's argument,[5] and the Court finds the Government's argument persuasive.  Review of the applicable federal regulations further supports the Government's argument that the requirement for independent judgment, pursuant to FAR 15.308, is limited to source selection decisions.  First, FAR 15.300 establishes the scope of Subpart 15.3 as the "policies and procedures for selection of a source or sources in competitive negotiated acquisitions."  Furthermore, FAR 15.302 states that "[t]he objective of source selection is to select the proposal that represents the best value."  It can hardly be argued that a contracting officer's decision to cancel a solicitation involves a decision to select the offer that represents the best value in a competitive procurement.  Thus, it reasonably follows that the specific policies and procedures that guide only source selection, including the "independent judgment rule," are not applicable to a contracting officer's decision to cancel a solicitation.

The Plaintiff has not cited authority to the contrary.  Therefore, the Court finds that the Plaintiff has not established that the solicitation cancellation decision was in violation of applicable federal regulations.

## 2.        Cost Analysis and Expectation of Cost Savings

The Court also finds that the Plaintiff fails to demonstrate that the solicitation cancellation decision lacked a rational basis.  To determine whether the decision had a rational basis, the Court assesses whether there was reasonable cost analysis and an expectation of cost savings supported by the administrative record.  *See supra* Section III.

The Plaintiff alleges that the Navy's solicitation cancellation decision was arbitrary and capricious because the cost analysis comparing the Plaintiff's offer to the alternative source was flawed.  The Plaintiff's primary arguments relate to (1) the cost assumptions for shipping and supplies; (2) the extent of the requirements for on-site collections; and (3) the cost comparison for on-site collections.  In addition to the Navy's solicitation, the Plaintiff's arguments involve the IAA, the DOI-Pembrooke contract (which supported the IAA), and the DOD-Pembrooke contract.

### a.        Assumptions for Costs of Shipping and Supplies

With regard to shipping information, the Plaintiff first argues that the Navy did not indicate the average quantity of specimens to be collected at each site to allow the contractors to take advantage of quantity shipping discounts.  *See* Pl.'s Mot. 13.  The Plaintiff infers that DOI, and therefore Pembrooke, had this information, whereas the offerors responding to the Navy's solicitation did not.  In a response to the Plaintiff, the Navy contracting officer explained that the Navy did not have this information, and that neither DOD nor any potential offeror, had any additional information other than what was in the Navy's solicitation.  AR 197-99.  In addition, the Government suggests that if there was additional information, then DOI would have factored that information into the IAA prices.  Def.'s Cross Mot. & Resp. 21.

---

[5]  Although the Plaintiff is not required to respond to the Government's argument in its reply brief, s*ee*  RCFC 52.1 (requiring only an initial motion supported by statement of facts and memorandum citing to the administrative record), the Plaintiff bears the burden of proving by a preponderance of evidence that the Navy violated applicable procurement law.

The Plaintiff next alleges that the IAA and the DOI-Pembrooke contract do not include shipping costs (i.e., shipping specimens to labs and shipping supplies to the sites) or the cost of the supplies for collection (e.g., "collection cups, lab coats, and gloves"), whereas the Plaintiff was required to include these costs in its offer.  Pl.'s Mot. 14.  The Government points out that this very question was raised by the Navy contracting officer in preparing the cost analysis.  *See* Def.'s Cross Mot. & Resp. 21 (citing AR 585).  In an email on December 16, 2008, to the Navy Drug Program Manager, the contracting officer stated "I am unsure if the pricing [in the DOI-Pembrooke contract] includes shipping of the supplies to the various Nationwide collectors and shipping the specimens to the lab.  I don't see any line item that covers shipping costs of either variety so I am assuming it is included but would like to verify that with the DOI POC."  AR 585.

In an email to the Plaintiff on January 6, 2009, the contracting officer indicated that "[t]he cost of shipping, with all the unknowns involved in the Navy's position, was included in our consideration and ultimate decision" to cancel the solicitation.  AR 197.  The contracting officer also communicated to the Plaintiff that "[t]he DoD program pricing includes cost of collection and shipment and is cheaper than that available under the proposals received in response to [the] solicitation."  AR 199.

The Government contends that the record supports the contracting officer's determination.  Def.'s Reply 3.  The Government explains that because the "DOI-Pembrooke prices are a component of the IAA prices" and included shipping and supplies, these costs were included in the IAA prices.  *Id.*  The Court notes that the Administrative Record supports the fact that the DOI-Pembrooke contract for "Nationwide Collections" included the collection supplies and shipping of the supplies to the collection site and the specimens to the testing lab.  *See* AR 314, 328.

The Plaintiff, in its final argument regarding shipping costs, alleges that, under the IAA, the Navy would not incur costs for shipping and collection supplies, whereas these costs were included in the Plaintiff's offer.  Pl.'s Resp. Def.'s Cross Mot. J. & Reply Pl.'s Mot. J. Admin. R. ("Pl.'s Resp. & Reply") 6.  According to the Plaintiff, Quest Diagnostics, Inc. ("Quest") (formerly NWT, Inc.), a contractor identified in the IAA for lab testing services, was responsible for payments of supplies and shipping.  Pl.'s Resp. & Reply 6 (citing AR 844, 846-59).  The Plaintiff contends that "[t]herefore, it is reasonable to conclude that Pembrooke was to utilize Quest laboratory under its contract."  *Id.* at 6.

As the Defendant argues, the Plaintiff's conclusions regarding Quest and the Navy's shipping costs are incorrect.  Although the IAA referred to Quest, not all organizations participating in the IAA used the IAA or Quest for their laboratory testing.  In particular, and of significance, since 2005, the Navy had obtained its testing services from Fort Mead Toxicology Drug Testing Lab, not Quest.  AR 592; *see also* AR 600 ("The Navy did not obtain laboratory analysis . . . services through the IAA.").  Therefore, the Plaintiff's argument regarding the Quest contract does not apply to the Navy.

Based on the above discussion, the Plaintiff's argument that the Navy's cost justification was flawed on the basis of cost assumptions for shipping and collection supplies is not supported by the Administrative Record.

b.      Extent of the Requirements for On-site Collections

The Plaintiff also contends that the contracting officer's cost comparison was flawed because of the differences in the services required under the DOI-Pembrooke contract and the Navy's solicitation. According to the Plaintiff, "the most significant difference is that the DOI-Pembrooke contract provides for on-site collection only within 100 miles of Washington DC, as compared to the Navy [solicitation] which requires on-site collection world-wide." Pl.'s Mot. 14.

The Government disputes the Plaintiff's arguments on two grounds. First, the Government states that the appropriate comparison is between the IAA and the Navy's solicitation, not with the DOI-Pembrooke contract. Def.'s Cross Mot. & Resp. 22. This argument is discussed in the following section. Second, the Government points out that both the IAA and the DOI-Pembrooke contract require that on-site collections be available world-wide. *See id.* The Government's argument is supported by the Administrative Record. *See* AR 27, 397, 390.

Thus, the Plaintiff's argument that the Navy's cost justification was flawed because the services required under the Navy's solicitation were not comparable to the IAA or the DOI-Pembrooke contract is not supported by the Administrative Record.

c.      Cost Comparison of On-Site Collections

The Plaintiff also contends that the cost analysis for on-site collections was flawed because the Navy should have compared the Plaintiff's offer to prices derived from the DOI-Pembrooke contract (rather than the IAA). *See* Pl.'s Resp. & Reply 5-6. The Plaintiff attempts to calculate the prices for on-site collections based on the DOI-Pembrooke contract, which yields alleged prices for the Navy that are higher than the prices under the IAA. *See id.*

The Plaintiff argues that the line item pricing in the DOI-Pembrooke contract is the appropriate comparison because the IAA "provides 'access' to the DOI/Pembrooke contract." Pl.'s Resp. & Reply 3. The Plaintiff also points to the fact that, under the IAA, DOD "can order services directly from Pembrooke and be invoiced by Pembrooke . . . . and [the IAA] is silent on whether the Pembrooke prices or the IAA prices apply in that situation." *Id.* In addition, the Plaintiff contends that "[t]he Pembrooke contract requirements are also relevant because they provide the basis for the price specified in the IAA." *Id.*

The Plaintiff, however, completely disregards the IAA and the prices specified, and actually charged, under the agreement. According to the IAA, the price for urine collection services within the United States was $44.30 per collection, whether performed by DOI collectors or by Pembrooke. AR 574-76, 605. The Navy Drug Program Manager determined that the IAA provided the same services as required under the Navy's solicitation. AR 311. Thus, the Court finds that the contracting officer's cost justification for cancelling the

solicitation, which compared the Plaintiff's offer to the IAA pricing, was reasonable.  In addition, the Plaintiff fails to cite to anything in the Administrative Record that suggests (1) the pricing that the Navy will incur under the IAA exceeds the prices in the Plaintiff's offer, or (2) the Navy will incur costs (e.g., for shipping) in addition to the prices set forth in the IAA for on-site urine collections.

In sum, the Plaintiff has failed to prove that the Navy's cost analysis was not rational. The Navy's justification comparing the IAA to the Plaintiff's offer was reasonable, and provided a reasonable expectation of cost savings if the Navy cancelled the solicitation and obtained its services via the IAA.  Thus, the Plaintiff's claim that the solicitation cancellation decision was arbitrary and capricious must be denied.

**B.     The Plaintiff Fails to Establish that DOD's Actions Were Clear and Prejudicial Violations of Applicable Statutes and Regulations**

In addition to protesting the Navy's decision to cancel the solicitation, the Plaintiff challenges DOD's "actions . . .  'connected with' the Defendant's procurement of drug testing services."  Pl.'s Mot.  9.  Specifically, the Plaintiff alleges that (1) DOD violated Economy Act regulations when it added the Navy to the IAA without executing a determination and findings ("D&F"), (2) DOD failed to provide notice of the amendment to the solicitation, which resulted in the DOD-Pembrooke contract, and (3) DOD violated the Competition in Contracting Act ("CICA") when it modified the DOD-Pembrooke contract to add on-site urine collection services. Although the Court concludes that there was a violation of Economy Act regulations because there was no execution of a D&F, the Court agrees with the Government that the Plaintiff was not prejudiced thereby.  The Court also finds that there was notice of the amendment to the solicitation and that there was no violation of CICA.

**1.      The Plaintiff Fails to Demonstrate that it was Prejudiced by DOD's Violation of Economy Act Regulations When it Added the Navy to the IAA**

After the Navy cancelled its solicitation for urine collection services, DOD added the Navy to the DOI IAA for the Navy's urine collection services.  AR 20-23.  The IAA was designated as an "Economy Act" agreement.  AR 21.  The Plaintiff alleges that DOD violated procedures mandated by the Economy Act, 31 U.S.C. § 1535, that require interagency orders subject to the Act be supported by a D&F.  Pl.'s Mot. 14-15.  According to the Plaintiff, a DOD official did not execute a D&F when DOD added the Navy to the IAA.  Pl.'s Resp. & Reply 7. The Plaintiff also contends that because a DOD official did not execute a D&F, the Plaintiff was prejudiced because it "was thus denied a senior review of Defendant's actions."  Pl.'s Mot. 15; Pl.'s Resp. & Reply 7-8.

Pursuant to FAR 17.502-2, "[e]ach Economy Act order to obtain supplies or services by interagency acquisition shall be supported by a determination and findings (D&F)."  The D&F, which is to be approved by an authorized contracting officer, "shall state that . . .  (i) [u]se of an interagency acquisition is in the best interest of the Government; and (ii) [t]he supplies or

12

services cannot be obtained as conveniently or economically by contracting directly with a private source." FAR 17.502-2(c)(1), (3).

In the Government's response, it contends that a *Navy* official was not required to execute a D&F, but argues that the more fundamental issue is that the Plaintiff "cannot possibly show that it was prejudiced by the absence of a D&F." *See* Def.'s Cross Mot. & Resp. 25-26. In its response, the Plaintiff clarifies that its argument is that no *DOD* official executed a D&F when the Navy was added to the IAA. *See* Pl.'s Resp. & Reply 2, 7. Because the Government does not dispute this, the Plaintiff has met its burden in establishing that DOD violated procurement law when it failed to execute a D&F.

After the Plaintiff establishes that there was a clear violation of procurement law, the Plaintiff must demonstrate that it was prejudiced by such violation. *See Bannum, Inc. v. United States*, 404 F.3d, 1346, 1351 (Fed. Cir. 2005) (noting that once the trial court determines that the award lacked a rational basis or was contrary to law, the court may award relief to the protestor only where it is demonstrated that the protestor was prejudiced by the decision of the agency). Therefore, the issue here is whether the Plaintiff was prejudiced by the absence of a D&F. Specifically, the question of prejudice turns on whether there is a substantial chance that a senior official, in executing a D&F, would conclude that the Plaintiff could provide the services "as conveniently and cheaply" as the IAA.

The Court has already determined that the Navy's cost savings analysis and justification in support of the cancellation decision were reasonable. *See supra* Section IV.A.2. The contacting officer concluded that the Navy could obtain the same services more cheaply via the IAA than "the proposals received in response to the solicitation." AR 212. Because the cost savings analysis was reasonable and supported by evidence in the Administrative Record, there is *not* a substantial chance that a senior official would arrive at a different conclusion. That is, there is not a substantial chance that an official authorized to execute a D&F would conclude that the Plaintiff's offer was less expensive than the IAA.

As the Plaintiff has failed to establish that it was prejudiced as a result of DOD not executing a D&F and having a senior level official review the decision to add the Navy to the IAA, the Court denies the Plaintiff's claim that DOD violated Economy Act regulations in connection with the IAA.

> **2.      The Plaintiff Fails to Establish that DOD Violated Statutory Requirements by Failing to Give Notice of an Amendment to the Solicitation**

As stated in the Background section of this opinion, during 2008, DOD decided that it would no longer obtain drug testing services through the IAA with DOI, and therefore, initiated a competitive procurement. *See* AR 600-01, 596. The United States Army Medical Research Acquisition Activity ("USAMRAA"), on behalf of DOD, issued a solicitation on September 4, 2008 that included only MRO services. AR 619, 621. After potential bidders raised questions regarding the scope of the procurement, USAMRAA issued an amended solicitation on September 24, 2008, to include clinic collection services. AR 616-17, 698, 738, 748-49.

The Plaintiff alleges that DOD failed to provide notice of the amended solicitation pursuant to 41 U.S.C. § 416 ("Procurement Notice"). Pl.'s Mot. 16. The Plaintiff contends that "[w]ithout knowledge that the nature of the procurement had changed from an MRO services only requirement to a MRO and collection services requirement, Plaintiff was denied the opportunity to participate in this procurement or to challenge it once it had been awarded." *Id.*

To succeed in a bid protest on the basis of an alleged violation of statute and regulation, the protestor must first show a clear violation of an applicable statute or regulation. In this case, the factual issue before the Court is whether the Government failed to provide notice of the solicitation amendment that added clinic collection services to the scope of the procurement. The Plaintiff points to the synopsis/solicitation available on-line, which was last accessed in May 2010. Pl.'s Resp. & Reply 8-9; AR 898-99. The Plaintiff contends that the absence of any activity in the "opportunity history" section of the synopsis/solicitation, other than the issuance of the synopsis/solicitation, means that that no public notices of the amended solicitation were posted to the website in 2009. Pl.'s Resp. & Reply 8-9. The Plaintiff does not offer any other evidence to substantiate that this inference is true.

The Government, however, provides testimony by the contract specialist that he posted the amended solicitation on the FedBizOpps website that added clinic collection services to the scope of the procurement. AR 616, 900-02. The Plaintiff contends that the contract specialist's testimony as to the posting of the notice is irrelevant and inadmissible under Rule 1002 of the Federal Rules of Evidence (FRE 1002). Pl.'s Resp. & Reply 9. Under FRE 1002, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." According to the Plaintiff, the Defendant must produce the document that the Defendant claims was posted at the FedBizOpps website. Pl.'s Resp. & Reply 9.

The Government argues that FRE 1002 is not applicable because the Government is not offering the contract specialist's testimony as evidence to prove the contents of the amendment, but rather to prove that the amendment was posted on the FedBizOpps website. Def.'s Reply 9-10. Thus, according to the Government, the contract specialist's testimony is admissible. Def.'s Reply 10.

The Court agrees with the Government. Pursuant to 28 U.S.C. § 2503(b), the Court of Federal Claims is required to observe the Federal Rules of Evidence. FRE 1002, known as the "best evidence rule," is applicable here only if the Government seeks to prove the contents of the amended solicitation. *See* FRE 1002; *see also United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053 (9th Cir. 1976).[6] In this case, the contents of the solicitation amendment are not in dispute. The Government is only seeking to prove that the amended solicitation was posted to the website, and therefore, does not need to produce the original document. Thus, the Court finds

---

[6] A decision of the Ninth Circuit Court of Appeals applying federal rules that are applicable to the Court of Federal Claims is instructive.

that the contract specialist's declaration is admissible as evidence that the Government provided public notice of the solicitation amendment.[7]

Faced on the one hand with an inference from the absence of information in the "opportunity history" and on the other hand with sworn testimony by the contract specialist, a government official, the Court believes that the latter is more persuasive. The absence of information is not conclusive that the amendment was not posted, whereas the witness's testimony absent a clear contradiction provides the Court sufficient evidence. As a result, the Plaintiff's allegation that DOD violated statutory procurement notice requirements is not supported by the Administrative Record.

### 3. The Plaintiff Fails to Establish that the Modification of the DOD-Pembrooke Contract Was in Violation of CICA

On November 5, 2008, DOD awarded a contract to Pembrooke ("DOD-Pembrooke contract") for MRO services and clinic urine collection services. AR 617, 760. In April 2009, DOD modified the contract to add on-site urine collection services. AR 821. The Plaintiff alleges that the modification was outside the scope of the original contract, and therefore, DOD violated the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304, when it failed to pursue a competitive procurement for the on-site collection services. Pl.'s Mot. 16. The Plaintiff contends that it was prejudiced because it was "denied an opportunity to compete for comparable services [to the Navy's solicitation] that were given to Pembrooke by an [sic] non-competed amendment to its contract." Pl.'s Mot. 11. The Government contends that the modification was within the scope of the original contract, and therefore, a competitive procurement was not required. Def.'s Cross Mot. & Resp. 28, 31.

The Federal Circuit has held that, pursuant to the CICA, if a contract modification "materially departs from the scope of the original procurement," a competitive procurement is required. *See AT&T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1205 (Fed. Cir. 1993). In *AT&T*, the court emphasized two criteria for determining whether a contract modification is beyond the scope of the contract. *Id.* at 1205-07; *see also Global Computer Enters., Inc. v. United States*, 88 Fed. Cl. 350, 425-427 (2009) (discussing a two-part test "for determining whether the modification materially departs from the scope of the original procurement").

According to *AT&T*, the court's analysis should first focus on the modification in the context of the original procurement, and not simply the differences in one service compared to an added service. *See AT&T*, 1 F.3d at 1205, 1207. Thus, the initial question is whether the modification "substantially affect[s] the type of service [the contractor] performs under the contract as a whole." *See id.* at 1206, n.3; *see also Global Computer*, 88 Fed. Cl. at 440 (concluding that the modification "substantially changed the type of services that the contractor was required to perform under the original . . . task order"). The appropriate comparison is the "scope of the entire original procurement in comparison to the scope of the contract as modified." *AT&T*, 1 F.3d at 1205.

---

[7] Although the Plaintiff also alleges that the contract specialist's testimony is irrelevant, the Plaintiff does not cite to any applicable rules, and its argument is not sufficiently developed. Therefore, the Court does not address the Plaintiff's issue of relevance.

A second factor emphasized in *AT&T* is the expectations of potential offerors. *Id.* at 1205, 1207. The Federal Circuit held that the court's analysis should also include whether potential bidders would reasonably expect the modification to fall within the scope of the contract's changes clause. *Id.* at 1205; *Global Computer*, 88 Fed. Cl. at 427. Potential bidders' expectations may be established by language in the contract that would alert bidders of the types of changes to anticipate, or by demonstrating that the particular modification is "of a nature which potential offerors would reasonably have anticipated." *AT&T*, 1 F.3d at 1207.

Thus, this Court, in determining whether the addition of on-site urine collections was beyond the scope of the original DOD-Pembrooke contract, will consider (1) the scope of services before and after contract modification and (2) the expectations of potential offerors.

a.      Scope of Services Before and After Contract Modification

The Plaintiff bears the burden of establishing that the modification substantially affects the scope of services that the contractor must perform. The Plaintiff, however, centers its argument merely on the differences in the specific services (on-site versus clinic), rather than on the differences in the scope of services in the contract as a whole before and after the modification. The Plaintiff first points to operational differences between on-site and clinic collections—the travel required for trained collectors to the on-site locations and the need to "recreate the clinic conditions [at the on-site locations] in order to meet the same regulatory requirements." Pl.'s Resp. & Reply 9; *see also* Pl.'s Mot. 18. Thus, the Plaintiff fails to demonstrate that the modification of adding on-site collections substantially changed the type of services the contractor was required to perform.[8]

The Plaintiff also argues that when DOD modified the DOD-Pembrooke contract, it simply added the requirements of the Navy's solicitation into an existing contract without competition. *See* Pl.'s Mot. 18. And according to the Plaintiff, "[i]t is difficult to see how the addition of an entire [solicitation] scope of work to another contract would not be a cardinal change." *Id.* However, the mere incorporation of the requirements of a pre-existing solicitation does not address whether the services to be performed under the modified contract are substantially different from those required under the original procurement. The Plaintiff's argument, therefore, has no merit.

In contrast, the Defendant's argument as to the differences in the scope of services before and after a contract modification is more to the point. The Defendant argues that because the modification is for essentially the same performance as the original contract, the addition of on-site collection services is not outside the scope of the contract, and therefore, a competitive procurement is not required. Def.'s Cross Mot. & Resp. 28, 31 (citing, inter alia, *Chapman Law Firm Co. v. United States*, 81 Fed. Cl. 323, 327 (2008)). The Defendant contends that on-site

---

[8] In addition, the facts asserted by the Plaintiff are not supported by the Administrative Record. Under the DOD Pembrooke Contract, with regard to on-site collections, the *agency*, not the contractor, is "responsible for assuring that the facilities meet the minimum guidelines referenced in the contract." AR 836. Thus, it appears that the contractors are not responsible for "recreat[ing] the clinic conditions," as alleged by the Plaintiff.

and clinic collections require the same expertise, must be performed in accordance with the same federal guidelines and procedures, and require the same training for those performing the collections.  Def.'s Cross Mot. & Resp. 29-30 (citing AR 608-09, 772, 835).  The only difference, according to the Defendant, is where the collection takes place.  Def.'s Cross Mot. & Resp. 29.

The parties' final arguments as to the differences between the original and modified contract focus on the cost.  The Plaintiff emphasizes the difference in unit costs of clinic and on-site collections, whereas the Defendant attempts to substantiate its argument by comparing the total cost of the contract before and after the modification.[9]  The Court, however, finds that the parties do not adequately explain how their arguments on costs relate to the question of the scope and types of services that the contractor was required to perform.

With regard to the first *AT&T* factor, that is, whether the modification represented a substantial change to the type of services performed under the contract, the Court agrees with the Defendant that the addition of on-site collection services is not a substantial change in the services performed under the contract.  The scope of the original contract includes urine collection services, and the scope of the modified contract includes the same urine collection services performed at different locations.  The Court now turns to the second *AT&T* factor, namely, whether potential offerors would have reasonably expected that on-site collection services would be within the scope of the original contract.

b.      Reasonable Expectations of Potential Offerors

The Defendant contends that potential offerors would have reasonably anticipated the modification, and therefore, it was within the scope of the contract.  The Defendant's assertions, however, are conclusory and not supported by the Administrative Record.[10]

Similarly, the Plaintiff's assertions that the potential offerors would not have reasonably expected at the time of competition that the addition of on-site collections would have been

---

[9]  In *AT&T*, the court noted that when comparing differences in costs, "the proper comparison is between the competed contract and the contract as modified."  *AT&T*, 1 F.3d at 1206, n.3.

[10]  According to the Defendant, "because on-site and clinic collection services are essentially the same, 'the modification is of a nature which the potential offerors would reasonably have anticipated."  Def.'s Cross Mot. & Resp. 30.  This statement is conclusory and fails to address the expectations of the offerors in the context of the contract clauses.  The Defendant also states that "increasing the DOD's urine collection capability" furthers the contract objective to "'to [e]nhance the capabilities of the DoD agencies to fulfill the DoD Civilian Drug Testing Program related missions.'"  *Id.*  The objective quoted by the Defendant, however, is the objective of DOD's MRO program, not the overall contract, and not the urine collection services.  *See* AR 763.  And finally, the Defendant asserts that "in the drug testing industry, drug collection providers reasonably expect that their duties will include both clinic and on-site collection, and therefore, potential bidders 'would have expected' onsite-collection services 'to fall within the contract's changes clause.'"  Def.'s Cross Mot. & Resp. 32.  The Government only points to the fact that Pembrooke, a provider of both services, bid on the contract and the fact that the Navy's solicitation also required both on-site and off-site locations, for which the Plaintiff bid.  *Id.* at 31-32.  Although the Government attempts to address reasonable expectations of potential bidders, its arguments are unsupported by the Administrative Record.

within the scope of the contract's changes clause are conclusory and not supported by the Administrative Record.  For example, the Plaintiff does not make any argument based on contract language in support of its position.  Unfortunately, since the burden concerning this factor rests on the Plaintiff, this Court must decide against the Plaintiff on the reasonable expectations of potential offerors.

In sum, because the Plaintiff has failed to persuade the Court that the modification substantially changed the types of services the contractor was required to perform and that potential offerors would not have reasonably expected the addition, it has not established that the modification was beyond the scope of the original contract.  Therefore, the Court denies the Plaintiff's claim that the Defendant violated CICA when it modified the DOD-Pembrooke contract.  *See Bannum*, 404 F.3d 1346 at 1355 (holding that the lower court applied the proper standard of review when it rejected the plaintiffs' claims where the plaintiffs failed to provide "any real proof" of their factual claim, or similarly, the plaintiffs' claims were "unsupported by the record").

### C.     Injunctive Relief is Not Warranted

The Plaintiff has not succeeded on the merits, and therefore, the permanent injunctive relief requested by the Plaintiff is not warranted.


## V.     CONCLUSION

For the reasons stated above, the Plaintiff fails to demonstrate that the Navy's decision to cancel the solicitation was arbitrary, capricious, or in violation of procurement law, or that DOD's procurement actions for drug testing services were clear and prejudicial violations of the law.  Therefore, the Court DENIES the Plaintiff's motion for judgment on the administrative record and GRANTS the Defendant's cross-motion for judgment on the administrative record.[11]

The Clerk of Court is hereby directed to enter judgment for the Defendant.


s/ Edward J. Damich
EDWARD J. DAMICH
Judge

---

[11]  This opinion is being issued under seal.  It is the intent of the court to release the opinion for publication after counsel have had the opportunity to propose the redaction of competition-sensitive, proprietary, confidential, or otherwise protected information.  Counsel for the parties shall confer and submit to chambers a proposed redacted version with the redacted information marked out and enclosed in brackets.  The court will subsequently issue the opinion for publication.  The parties' proposed redacted version shall be submitted to chambers on or before March 15, 2011.